No. 19,583.

PRESTON PARIS, *Appellee*, v. L. A. GOLDEN and E. G. GOLDEN, *Appellants*, and FRANCIS M. CLAUDEL, *Appellee*.

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Judgment*—*"Deed of Conveyance" Ordered* —*Warranty Deed Implied*. A judgment in an action for the specific performance of a contract for the sale of land, ordering the vendor to make a "deed of conveyance," will be interpreted as calling for a warranty deed, where that was the kind of conveyance provided for in the contract.

2. SAME—*Breach of Warranty*—*Action Maintainable*. Where a judgment for specific performance provides that in the event of the failure of a vendor to execute a warranty deed the decree itself shall operate as such a conveyance, and no deed is executed, the vendee may maintain an action for a breach of warranty in case the title proves defective.

3. SAME—*Pleadings*—*Offer to "Accept Warranty Deed"*—*Construction*. Where the vendee sues for specific performance of a contract to sell land, and in his petition alleges his willingness to accept a warranty deed conveying such title as the vendor had at the time the action was brought, such allegation is not to be interpreted as an offer to take the property subject to an existing mortgage.

4. SAME—*Breach of Warranty*—*Mortgage Lien*—*Vendee's Right of Recovery*. Where the petition in an action by a vendee for the specific performance of a contract for the sale of land refers to an existing mortgage, the fact that a judgment is rendered for a conveyance of the property, without an abatement in the price, does not preclude a subsequent action against the vendor for breach of warranty on account of the existence of such lien.

Paris v. Golden.

5. SAME. A vendee who, with knowledge of the existence of a mortgage securing a note of the vendor, pays for a tract of land the full amount contracted to be paid for a clear title, is not presumed to accept it subject to such lien, in the absence of some expression to that effect.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed December 11, 1915. Reversed.

*F. W. Mahin,* and *I. M. Mahin,* both of Smith Center, for the appellants.

*L. C. Uhl,* and *L. C. Uhl, jr.,* both of Smith Center, for the appellees.

The opinion of the court was delivered by

MASON, J.: On November 1, 1905, F. M. Claudel was the owner of a number of tracts of land upon a part of which he had given to Preston Paris a mortgage securing his note for $1500. On that date he entered into a written contract to convey all the land by warranty deed to L. A. Golden for $31,600. He failed to carry out the agreement, and on March 16, 1909, Golden brought an action for specific performance in which he obtained a judgment which was affirmed by this court. (*Golden v. Claudel,* 85 Kan. 465, 118 Pac. 77.) The court ordered Caudel to make "a deed of conveyance" of the land to Golden, and provided that in the event of his failure to do so the decree should "stand as and for such conveyance," "as effectively as if the conditions . . . imposed upon the said F. M. Claudel had been wholly complied with upon his part by the execution and delivery of the deed of conveyance to the said L. A. Golden." Claudel executed no deed, but Golden paid the agreed price and obtained title and possession by virtue of the decree.

On July 15, 1913, Paris brought an action to foreclose the mortgage, which developed a controversy between Claudel and Golden. Claudel maintained that Golden had accepted the property subject to the lien, and must take care of it himself, or submit to its being enforced against the land, without recourse on any one. Golden contended that if he should be compelled to pay the claim, Claudel was liable to him for the amount, in virtue of being a warrantor of his title. The court decided in favor of Claudel, and Golden appeals.

The conveyance which Claudel was ordered to make was not described in the decree as a "warranty deed," but as a "deed of conveyance." Although the decisions elsewhere are in conflict (36 Cyc. 791), in this state a contract to make a deed, nothing being expressed as to its character, implies that the usual covenants of warranty are to be given (*Putnam v. King*, ante, p. 109, 150 Pac. 559). It would seem logically to follow that the term should receive the same interpretation when used in such a decree as that here involved. But however that may be, a judgment is to be construed in the light of the pleadings on which it is based. (*Clay v. Hildebrand Bros. & Jones*, 34 Kan. 694, 9 Pac. 466; 23 Cyc. 1102.) The pleadings in the specific performance suit showed that Claudel had agreed to give a warranty deed passing a clear title, and the judgment enforcing the contract should be interpreted as requiring that kind of a conveyance, in the absence of anything to indicate the contrary. The decree of the court by its own terms was to have the same force as a deed executed by Claudel, and the statute gives it that effect. (Civ. Code, § 398.) Golden was therefore entitled to look to Claudel as the warrantor of his title.

But it is urged in behalf of Claudel that in the action for specific performance Golden had agreed to accept such title as Claudel had, and that this bound him to take the land subject to the mortgage lien. The contention is based upon this language of the petition in that case: "The said plaintiff further alleges that, on the 1st day of March, A. D. 1906, he was ready, able and willing, and has ever since been and still is able, ready and willing to perform all of the terms and conditions of said contract of sale upon his part and pay the full purchase price of said land and accept a warranty deed conveying the title to said lands and tenements, of which the said defendant was seized on the 1st day of March, A. D. 1906, or such title as the defendant had in said above-described premises at the time of the commencement of this action." It is to be observed that the plaintiff declared himself willing to accept a *warranty deed* conveying the defendant's title as it had existed before the action was brought. The sentence quoted can not be regarded as meaning that Golden would accept whatever title Claudel had, subject to any existing liens, and pay

the full price agreed upon. That thought is not fairly to be derived from the language, and such an interpretation would allow no force whatever to the restriction that the conveyance was to be by warranty deed. That a buyer is willing to take a defective title without an abatement in price does not justify an inference that he assents to standing the loss himself. The presumption is to the contrary. Thus, in a Note in 10 L. R. A., n. s., 121, it is said:

"Of course, if the vendee is willing to take the vendor's defective title without asking for an abatement in the purchase price, presumably relying upon possession and the covenants for title in his deed, the vendor will not be permitted to set up his defective title or insufficient estate as a defense to an action for the specific performance of his contract."

The petition in the specific-performance suit referred to the existence of the mortgage in question, but nothing was actually litigated in that connection. A different cause of action is now being prosecuted, and the rule does not apply that everything is concluded that might have been there determined. (*Stroup v. Pepper,* 69 Kan. 241, 76 Pac. 825.) It is true that in that action Golden might have had the amount of the mortgage lien ascertained, and might have exacted a corresponding deduction from the purchase price. (36 Cyc. 745.) But he was not required to do so. The option lay with him. "The vendee [seeking specific performance] in all cases, whether he was aware of the defect in the vendor's title or not, may, on payment of the full contract price, elect to take such title as the vendor is able to convey, and rely for his relief upon his legal action on the covenants in the vendor's deed." (36 Cyc. 746.)

The mortgage secures the personal note of Claudel. The primary obligation originally rested upon him to pay the debt, the mortgage being only a security. This primary obligation did not shift to Golden by the mere fact that he became the owner of the property. (27 Cyc. 1335.) To bring about that result he must have accepted it subject to the mortgage. (27 Cyc. 1343.) He did not do this expressly, and the fact that he paid the full amount agreed upon as the price for a clear title excludes the notion of his having done so by implication. The fair inference is that Golden assumed that Claudel would pay his note, thus dispensing with any controversy regarding the mortgage.

. "If the property is sold without any agreement or understanding as to the payment of the mortgage, and without any allowance for it in the purchase-price, the burden of the mortgage debt is not shifted to the purchaser and the mortgagor will not be entitled to charge it upon him." (27 Cyc. 1340.)

In April, 1912, Golden sued Claudel for the rental value of the land during the time he had been kept out of possession. In his original petition in that action he included a claim by reason of the existence of the mortgage, but as the count relating thereto was dismissed before judgment the fact does not affect the present rights of the parties.

Golden makes a contention that if he is held to have become the principal debtor, no action was brought against him until more than five years after the situation arose, and that therefore the statute of limitations protects him. As we hold Claudel to be still primarily liable, this question need not be considered.

The judgment is reversed and the cause remanded with directions to render judgment in favor of Golden against Claudel for the amount of the lien, upon its being paid by Golden, or from the proceeds of a judicial sale of the land.